The PEOPLE of the State of Colorado,

v.

David T. SPURLOCK.

No. 85SA255.

Supreme Court of Colorado,
En Banc.

Oct. 21, 1985.

Linda Donnelly, Disciplinary Prosecutor, Denver, for complainant.

David T. Spurlock, pro se.

KIRSHBAUM, Justice.

A formal complaint was filed against the respondent, David T. Spurlock, on November 15, 1983, with the Colorado Supreme Court Grievance Committee (the Committee) by the disciplinary prosecutor, alleging two counts of professional misconduct. Hearings on the complaint were conducted on February 20 and 21, 1985, before a hearing board, at which time numerous ex-

hibits were introduced by stipulation. Among those exhibits was a stipulation by the respondent that by certain conduct he had violated the Code of Professional Responsibility. The board ultimately entered findings, conclusions and recommendations, including the recommendation that the respondent be suspended from the practice of law for a period of time. The board's report was approved by a panel of the Committee and forwarded to this court for final action. The respondent has filed no exceptions to the panel's action. We agree that suspension is an appropriate sanction in the circumstances of this case.

The respondent was admitted to the Bar of Colorado on May 18, 1981, is registered as an attorney with this court and is subject to the jurisdiction of this court and of the Committee with respect to his conduct as an attorney. The following material facts appear in the Committee's report; neither the respondent nor the disciplinary prosecutor has taken exception to any portion of the report.

I

The respondent was admitted to practice law in Nevada in 1970. In 1979, after a traumatic and difficult divorce, he solicited employment with a Durango, Colorado law firm. In connection with his application, he provided his prospective employers with a resume indicating that he had obtained an LL.M. degree in taxation from the New York University School of Law. In fact, the respondent had not obtained such a degree. The respondent was hired, and on occasion he handled tax matters for the firm's clients. The respondent never informed the firm that he had not obtained the advanced degree.[1] While employed by the firm, the respondent converted a $500 retainer fee paid by a client by depositing the sum into his personal account rather than into the firm's account.[2]

---

1. The hearing board concluded that there was no evidence indicating that respondent's tax work suffered as a result of his misrepresentation.

2. The respondent also cashed a check in the sum of $533 issued to him by the firm as a travel advance for his attendance at an educational seminar in Denver, which sum includ-

The respondent admitted that his conduct in falsifying his employment application and in converting funds belonging to his employer violated C.R.C.P. 241.6 concerning discipline of attorneys, as well as DR1–102(A)(1), prohibiting violation of a disciplinary rule, and DR1–102(A)(4), providing that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation. The respondent's continuing failure to disclose his misrepresentation further supports the conclusion that he chose to abandon his professional obligation to deal with clients and attorneys with candor and without misrepresentations.

## II

On October 21, 1980, the respondent purchased improved real property near Durango from Mr. and Mrs. Klein for approximately $78,000. In connection with this transaction, the respondent executed a note and deed of trust in the amount of $54,000. The deed of trust contained a due-on-sale provision.

In late 1981, the respondent advertised the property for sale. On February 28, 1982, a former acquaintance of the respondent, Stephen Stuhmer, executed an agreement to purchase this property. Stuhmer paid the respondent $5,000 pursuant to the agreement, and the respondent agreed to obtain title insurance and to handle all other necessary matters with regard to the closing. The agreement expressly warranted that the respondent had an unrestricted right to convey the property, that the property was free and clear of all liens, that no litigation was pending or threatened affecting the respondent's title to the property or his ability to convey the property, and that there were no written or verbal agreements known to the respondent which would affect the ownership of the property.

After the sale the respondent or his brother continued to live on the property

and the respondent agreed to pay Stuhmer $490.96 as monthly rent. Between May 15, 1982, and April 22, 1983, the respondent wrote thirteen checks on five different bank accounts to Stuhmer. Many of these checks were returned to Stuhmer marked "insufficient funds" or "account closed." On some occasions Stuhmer called the appropriate bank when he received a check, was informed that the check would not clear, and elected not to deposit the check. The respondent conceded that with regard to at least one or two of these checks he knew that the relevant account did not have sufficient funds to permit the check to clear. Apparently, all or most of these checks were eventually made good by the respondent.

The respondent's representation to Stuhmer that there were no impediments to the sale of the house was not true. Initially, the respondent's deed of trust with the Kleins contained a due-on-sale clause. The hearing board concluded that the respondent failed to examine the documents connected with his purchase of the property before making such representation to Stuhmer, and that this misrepresentation constituted gross negligence rather than intentional conduct. The hearing panel approved this conclusion, and we have no basis to reject it in the absence of any exception thereto.

Prior to executing the purchase agreement with Stuhmer, the respondent had issued several checks to the Kleins pursuant to the terms of the 1980 note which were not collectible due to insufficient funds. On April 13, 1982, the Kleins filed a foreclosure action against the respondent, seeking return of the property on the grounds that the respondent had failed to make monthly payments on the note and had failed to pay taxes and insurance on the property.

---

ed an amount for air fare. In fact, the respondent drove to Denver, and the hearing board stated that the evidence indicated that the respondent neither attended the seminar nor refunded any of the sum to the firm. The respon-

dent testified that he missed a flight, that he attended the program, and that he had refunded a portion of the advance to the firm. This factual dispute was not resolved by the hearing board.

In view of these circumstances, the respondent's warranty to Stuhmer that no circumstances existed to cloud the respondent's title or ability to convey the property was a misrepresentation. The hearing board concluded, however, that the respondent's conduct in this particular was not accompanied by fraud, deceit or dishonesty. This conclusion was approved by the hearing panel, and no exception has been taken thereto. The Kleins refused all efforts by Stuhmer and the respondent to cure these breaches, and the Kleins subsequently obtained an order of foreclosure. The respondent did obtain a title insurance commitment with regard to the Stuhmer transaction. The commitment identified a lien of $3,036.86 against the property, representing the balance of a loan obtained in July 1981 by the respondent from Burns National Bank. Although the bank instituted foreclosure proceedings when the due date on the original note fell without full payment having been obtained, the respondent redeemed the property from that sale.

The respondent disclosed neither the commitment nor the outstanding lien to Stuhmer. The hearing board concluded that this conduct was not accompanied by fraud, deceit or dishonesty. The hearing panel approved this recommendation, and no exception thereto has been filed.

We conclude that the respondent's misconduct, which continued over a lengthy period of time, was aggravated and egregious. His multiple misrepresentations to his employer, his friend and his creditors, even though not accompanied by fraud or deceit, demonstrate a uniform and complete abdication of his responsibilities as an attorney to deal honestly and forthrightly with others who rely upon his professional status. Stuhmer testified that he did rely in great part on the respondent's represen-

tations concerning the title to the real property in which he was interested because the respondent was an attorney. While no one of the transactions, in light of the respondent's prior unblemished record, would necessarily result in the imposition of the sanction of suspension, in combination they indicate such a continual failure of commitment to those principles of fidelity and truthfulness essential to the practice of law that this sanction is warranted.

It is to be noted that the respondent's personal trauma over his divorce contributed to his unprofessional conduct during this time, and that the respondent has not previously been disciplined for any violation of the Code of Professional Responsibility. Furthermore, the respondent has resolved or made arrangements to resolve most of the financial claims of the Kleins, of Stuhmer, and of his former employer. These are matters of mitigation; they do not excuse the respondent's continuing misconduct.[3]

In view of the circumstances, we order that the respondent, David T. Spurlock, be suspended from the practice of law for two years from the date of this decision and that, as a condition of reinstatement, he shall fully satisfy the terms and conditions of C.R.C.P. 241.22(b), (c), and (d). It is further ordered that the respondent shall pay the costs of this disciplinary proceeding, in the amount of $3,020.90, such sum to be paid to the Colorado Supreme Court Grievance Committee, Dominion Plaza Building, 600 17th Street, No. 520–S, Denver, Colorado 80202, within six months of the date of this opinion.

---

**3.** The hearing panel has recommended that respondent be suspended from the practice of law for two years minus the period of time equal to the time of the approval of the hearing panel's initial opinion to the date of this court's opinion, such credit, however, to be limited to a maximum period of six months. In fixing the recommended sanction for violation of the Code of Professional Responsibility, a hearing panel should not authorize credits or extensions except in unusual circumstances not present here. The hearing panel should recommend an appropriate sanction commensurate with the violations of the Code of Professional Responsibility without regard to extraneous factors resulting from the pendency of the proceedings themselves.